UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DAVID TRAN                                                          CIVIL ACTION

VERSUS                                                              NUMBER: 18-3465

UNITED STATES MARSHALS                                              SECTION: "I"(5)
SERVICE, ET AL.

## REPORT AND RECOMMENDATION

Using the standardized form that is made available to prisoners for filing suit pursuant to 42 U.S.C. §1983, the above-captioned matter was filed by *pro se* Plaintiff, David Tran, against Defendants, the United States Marshals Service ("USMS"), the St. Charles Parish Correctional Center ("SCPCC," better known as the Nelson Coleman Correctional Center, "NCCC"), the St. Charles Parish Sheriff's Office ("SCPSO"), and the unidentified Sheriff of St. Charles Parish. (Rec. docs. 5, pp. 1, 2, 3, 4; 5-1, pp. 1, 5). Given the entities and the individual named as Defendants herein, this matter comes before the Court for statutory screening under 28 U.S.C. §1915A irrespective of the fact that Plaintiff has paid the civil action filing fee prescribed by 28 U.S.C. §1914(a). (*See* docket entry between rec. docs. 7 and 8). The gatekeeping provision codified in §1915A directs a district court to dismiss a complaint, or any portion thereof, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or if it seeks monetary relief from a defendant who is immune from providing such relief. 28 U.S.C. §1915A(b)(1) and (2); *see also* 42 U.S.C. §1997e(c)(1). For the reasons that follow, it is recommended that Plaintiff's lawsuit be dismissed pursuant to 1915A(b) and §1997e(c).

Plaintiff is a federal pre-trial detainee who was assigned to be housed at the SCPCC/NCCC by the USMS following his arrest on Monday, November 7, 2017 and pending the resolution of the criminal charges that are pending against him in *United States v. Tran*, No. 17-CR-217 "H"(1). In the process of being booked into that facility by the SCPSO, Plaintiff alleges that he was "negligently injured" when he slipped and fell over an "improperly stored" leg shackle that was connected to a booking bench. Despite requesting medical care, Plaintiff states that he was not taken to the hospital or provided any treatment for his back, shoulder, hands, legs, and fingers, constituting deliberate indifference to his medical needs and the negligent imposition of suffering. (Rec. docs. 5, pp. 3, 4; 5-1, p. 5). Plaintiff seeks three million dollars in compensatory and punitive damages. (Rec. doc. 5-1, p. 6).

The first of the four Defendants named in this matter is the USMS, a federal law enforcement agency within the U.S. Department of Justice. *See* 28 U.S.C. §561, *et seq.* As to it, "[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475, 114 S.Ct. 996, 1000 (1994). "Sovereign immunity is jurisdictional in nature." *Id.* The Court being undirected to and unaware of any waiver of sovereign immunity by the USMS, via statute or otherwise, it lacks jurisdiction to consider the claims against the agency. *Sheid v. United States Marshal Service*, No. 08-CV-3295, 2009 WL 1750379 at *7 (S.D. Tex. Jun. 17, 2009), *aff'd*, 379 Fed.Appx. 345 (5th Cir. 2010), *cert. denied*, __ U.S. __, 131 S.Ct. 1469 (2011). Even if that were not the case, to the extent that this matter can be construed as a *Bivens*[1]/ action, the counterpart to an action under §1983, *Evans v. Ball*, 168 F.3d 856, 863 n. 10 (5th Cir. 1999), such an action may not be brought against a federal agency like the USMS. *Sheid*, 2009 WL 1750379 at *8. For these

---

[1]/ *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999 (1971).

reasons, Plaintiff's complaint fails to state a claim upon which relief can be granted as to the USMS and should thus be dismissed. *Id.*

The second Defendant named by Plaintiff in this matter is the SCPCC/NCCC. That correctional center, however, is not a proper defendant – it is a building, not a "person" subject to suit under §1983. *Langlinais v. Nelson Coleman Corr. Center*, No. 13-CV-3003, 2013 WL 5507303 at *1 (E.D. La. Oct. 2, 2013); *Davis v. Nelson Corr. Center*, No. 10-CV-2257, 2010 WL 4935304 at *2 (E.D. La. Oct. 29, 2010), *adopted*, 2010 WL 4931883 (E.D. La. Nov. 30, 2010); *Taylor v. Nelson Coleman Corr. Center*, No. 10-CV-0841, 2010 WL 1979618 at *2 (E.D. La. Apr. 22, 2010), *adopted*, 2010 WL 1980406 (E.D. La. May 14, 2010); *Diggs v. Nelson Coleman Corr. Center*, No. 10-CV-0097, 2010 WL 1038229 at *3 (E.D. La. Feb. 17, 2010), *adopted*, 2010 WL 1038230 (E.D. La. Mar. 17, 2010). No valid §1983 claim against the SCPCC/NCCC lies here.

Next in terms of named Defendants is the SCPSO. In Louisiana, a "… sheriff's office is not a legal entity capable of being sued …" *Cozzo v. Tangipahoa Parish Council – President Gov't*, 279 F.3d 273, 283 (5th Cir. 2002); *Wetzel v. St. Tammany Parish Jail*, 610 F.Supp. 2d 545, 548 (E.D. La. 2009); *Causey v. Parish of Tangipahoa*, 167 F.Supp. 2d 898, 904 (E.D. La. 2001); *Ruggiero v. Litchfield*, 700 F.Supp. 863, 865 (M.D. La. 1988). In light of these authorities, Plaintiff's §1983 claim against the SCPSO should also be dismissed.

The final named Defendant in this matter is the unidentified Sheriff of St. Charles Parish. Not only does Plaintiff fail to specifically identify the Sheriff by name, he also fails to provide any indication in his complaint of the capacity(ies) in which the Sheriff is being sued. "When a pro se plaintiff does not specify in his complaint whether a defendant is named in his or her official or individual capacity, it is generally presumed by operation of law that the

defendant is named in his or her official capacity." *Douglas v. Gusman*, 567 F.Supp. 2d 877, 888-89 (E.D. La. 2008). "'In a suit brought against a municipal official in his [or her] official capacity, the plaintiff must show that the municipality has a policy or custom that caused his injury.'" *Carter v. Strain*, No. 09-CV-0015, 2009 WL 3231826 at *2 (E.D. La. Oct. 1, 2009)(quoting *Parm v. Shumate*, 513 F.3d 135, 142 (5th Cir. 2007), *cert. denied*, 555 U.S. 813, 129 S.Ct. 42 (2008)). "'A plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity.'" *Id.* (quoting *Colle v. Brazos County, Texas*, 982 F.2d 237, 245 (5th Cir. 1993)). Rather, the plaintiff ". . . must identify the policy or custom which allegedly caused the deprivation of his constitutional rights." *Id.* (citing *Murray v. Town of Mansura*, 76 Fed.Appx. 547, 549 (5th Cir. 2003) and *Treece v. Louisiana*, 74 Fed.Appx. 315, 316 (5th Cir. 2003)).

Measured against the foregoing standards, Plaintiff's allegations against the Sheriff in his official capacity fail to state a claim upon which relief can be granted, as he does not allege that the purported deprivation resulted from a policy or custom, much less identify any such policy or custom. *Carter*, 2009 WL 3231826 at *2. Construing Plaintiff's allegations as having been made against the Sheriff in his individual capacity, Plaintiff fares no better for the following reasons. Although Plaintiff identifies the Sheriff as a Defendant on one of the pages of his complaint (rec. doc. 5-1, p. 5), he presents no factual allegations that specifically illustrate the Sheriff's participation in the alleged wrong, a necessary requirement in a civil-rights cause of action. *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986). "To state a cause of action under §1983, the plaintiff must allege facts reflecting the defendants' participation in the alleged wrong, specifying the personal involvement of each defendant." *Jolly v. Klein*, 923 F.Supp. 931, 943 (S.D. Tex. 1996)(emphasis added)(citing *Murphy v. Kellar*,

4

950 F.2d 290, 292 (5th Cir. 1992)). Moreover, supervisory officials like the Sheriff cannot be held liable for civil-rights violations allegedly committed by his associates based on a theory of strict or vicarious liability. *Harvey v. Andrist*, 754 F.2d 569, 572 (5th Cir.), *cert. denied*, 471 U.S. 1126, 105 S.Ct. 2659 (1985).

Even if Plaintiff had named one or more proper Defendants in this matter and/or had identified and pled more specific allegations against the Sheriff, the undersigned would nevertheless recommend that his lawsuit be dismissed for the following reasons. Plaintiff's primary claim is that he was "negligently injured" when he fell over an "improperly stored" leg shackle in the booking area of the SCPCC/NCCC. Such an allegation is not actionable under §1983 as the Due Process Clause is simply not implicated by a negligent act of a state official causing unintended loss of or injury to life, liberty, or property. *Herrera v. Millsap*, 862 F.2d 1157, 1160 (5th Cir. 1989)(quoting *Daniels v. Williams*, 474 U.S. 327, 328, 106 S.Ct. 662, 664 (1986)).

Nor does Plaintiff's complaint present an arguable claim for deprivation of needed medical care. To facilitate the Court in conducting the statutory screening mandated by §1915A(a), earlier on in this case the Sheriff was ordered to provide the undersigned, as well as Plaintiff, with a verified copy of the medical records that were generated at the SCPCC/NCCC. (Rec. doc. 8). Among those records is an Incident Report that was prepared by Corporal Ronald Springer the day after the occurrence. According to that Report, at approximately 6:42 p.m. on the day in question Springer ordered Plaintiff and two other inmates who were seated on the bench to stand up and walk to a particular cell. As Plaintiff was in the process of doing so, he stepped onto a shackle that was connected to a booking bench and slipped and fell, landing on his lower back. Springer notified the Medical

Department of the incident and four minutes later, LPN Bridgette Oubre arrived on the scene, checked Plaintiff's vital signs, and performed an initial evaluation of his lower back. Oubre then conferred with Dr. Lawrence Durante and thereafter advised Corporal Singer that Plaintiff had been placed on the list to see the doctor and to have an x-ray done of his lower back. Plaintiff was prescribed Ibuprofen 800 mg three times per day and was cleared to return to his cell. Video surveillance of the incident was reviewed by Lieutenant Raiford who confirmed that Plaintiff had slipped on a shackle that was attached to a front booking bench.

In being screened and processed into SCPCC/NCCC on November 7, 2017, Plaintiff was initially assigned to suicide watch after he refused to answer questions about his current mental state. By the following day, that assignment had been discontinued by the doctor after Plaintiff denied suicidal and homicidal ideations and was observed to be calm and cooperative with normal speech. He was assigned to a bottom bunk and appointments with two other doctors were scheduled for November 13 and 14, 2017. Plaintiff appeared before the Court for a detention hearing in his criminal case on November 9, 2017. In connection with that hearing, the undersigned issued an order directing the St. Charles Parish Sheriff to have Plaintiff medically examined and/or treated for "bruising/injury to back." (Rec. doc. 13 in No. 17-MJ-145). On November 10, 2017, Plaintiff completed a "Request for Sick Call" form asking to be seen by a doctor for an unspecified complaint. That form was responded to with a request that Plaintiff identify his medical concern. Plaintiff was seen by a psychiatrist for suicide watch follow-up on November 13, 2017 and overall improvement to his mental health was documented. Later that night, Plaintiff submitted another "Request for Sick Call," stating that he was hurt and needed to see a doctor. The following day, Plaintiff was evaluated by Dr. Wood, who ordered x-rays of the left shoulder and lumbar spine, prescribed

6

Tylenol for pain relief, and directed that Plaintiff remain on lower bunk assignment for two months. The ordered radiological studies were conducted on November 16, 2017. X-rays of the left shoulder were unremarkable. X-rays of the lumbar spine, however, revealed an age-indeterminate avulsion fracture of the superior anterior endplate of the L5 vertebral body with mild scattered degenerative disc disease.

Plaintiff's pain medication list was reconciled on November 21, 2017. The following day, Plaintiff was re-evaluated by Dr. Wood in light of the recent x-ray results. Plaintiff's lower back pain was said to be "better" and the plan was to refer him to an orthopedist if there was no significant improvement in two weeks. His medication regimen was adjusted to better manage his pain. Per Dr. Wood's order, Plaintiff's mattress was also to be inspected to assure that it was properly inflated. On November 25, 2017, Plaintiff was seen by medical personnel for a single episode of coughing up blood and upset stomach after taking his medications the previous evening. Plaintiff was administered Pepto Bismol several days later after complaining of nausea and vomiting for three days. He was observed to ambulate without difficulty on this date. He also complained of a continuing back and left shoulder pain in a sick call request form dated November 26, 2017. Plaintiff was seen by Dr. Durante on November 30, 2017 and was prescribed Vistaril. A follow-up appointment with Dr. Wood was scheduled for December 6, 2017.

On December 4, 2017, Plaintiff completed an "Inmate Request Form" which he directed to the Medical Department complaining of the adequacy of the mattress in his cell. A handwritten notation on the top right-hand corner of the form indicates that Plaintiff was eventually provided with a better mattress pursuant to a request from the Medical Department. Plaintiff was seen again by Dr. Wood on December 6, 2017 and a multi-step

7

treatment plan was put in place, including a referral to an orthopedist. Based on recent weight loss and a high TSH level following further testing on December 8, 2017, Dr. Wood also made an urgent request that Plaintiff be seen by an endocrinologist.

When he was next seen by Dr. Wood on January 3, 2018, Plaintiff reported an improved appetite and corresponding weight gain. He was continued on lower bunk assignment and his medications were adjusted. Plaintiff completed another sick call request form on January 8, 2018 in which he complained of the lack of grab bars or railings in the shower area of the cell to which he had recently been transferred, increasing the risk of another slip-and-fall. He was seen again by Dr. Wood on January 9, 2018 who ordered x-rays of the cervical and thoracic spines and was to attempt to expedite an orthopedic consultation. In a "Progress Note" of that same day, Dr. Durante discontinued multivitamins and Prilosec for Plaintiff after he had refused over seven offered doses. The prescribed radiological studies were performed on January 11, 2018. X-rays of the cervical spine demonstrated only mild degenerative disc disease and those of the thoracic spine revealed no acute findings.

On January 17, 2018, Plaintiff was seen yet again by Dr. Wood, erroneously representing during screening that he had never seen a doctor other than a psychiatrist and that had never seen a doctor for neck or shoulder pain. On this date, Plaintiff complained of pain to the little finger of his right hand as well as neck pain. Although it was minimally tender, Plaintiff had a full range of motion to the neck as well as a full range of motion to the shoulder. The dosage of Plaintiff's Flexeril was adjusted and he was maintained on lower bunk assignment.

At the time of his next evaluation by Dr. Wood on February 7, 2018, Plaintiff advised the attending medical personnel that he was refusing his medications unless they were given to him at twice the prescribed dose, because what had been previously dispensed produced no effect. Plaintiff complained of upper back pain, neck pain, and headaches but indicated that he was still able to safely perform all activities of daily living. He also complained of bugs in his hair. Plaintiff's treatment plan was updated and although the results of a lower back exam were within normal limits, the doctor continued to push for an earlier appointment at the LSU Orthopedic Clinic. Plaintiff refused the dosages of Flexeril, Tylenol, Zostrix, and Lotrisone Cream that were offered to him on March 7, 2018, duly executing a "Refusal of Treatment Form" that memorialized his declination. On March 27, 2018, Plaintiff completed another "Inmate Request Form" directed to the Medical Department in which he complained that his back and finger bothered him when he was trying to sleep at night and that he had been provided with a cream analgesic rather than a topical medication for a rash that he was suffering from. Bloodwork for Plaintiff's thyroid condition was done on March 29, 2018 which showed improvement.

On April 3, 2018, Plaintiff was seen yet again by Dr. Wood. His low back pain had improved to only an "on-and-off" frequency and he had a better general appearance after having gained weight. However, he still complained of pain and reduced flexion to a finger on his right hand. Tylenol was discontinued, the dosage of Flexeril was reduced, and Plaintiff was to continue with Lotrisone Cream. X-rays of the right hand were taken on April 5, 2018 which revealed no evidence of fracture. On April 6, 2018, Plaintiff was evaluated by Dr. Monisha Chadha of the Leonard J. Chabert Medical Center Endocrinology Clinic in connection with his earlier elevated TSH level. Plaintiff reported a recent weight gain of 40 pounds,

acute complaints were denied, and there were no limitations in his physical capabilities. Upon physical examination, Plaintiff had a normal range of motion through the neck and the entire musculoskeletal system. In light of the improved lab results and Plaintiff's weight gain, he was discharged from the Endocrinology Clinic.

Plaintiff completed an "Offender Request Form" on April 16, 2018 in which he requested to see a psychologist as soon as possible to address unspecified mental health issues. He submitted another "Request for Sick Call" on April 19, 2018 complaining of back pain and numbness in the hand and feet. On April 23, 2018, Plaintiff was seen by a psychiatrist with follow-up to occur as needed. The final "Progress Note" that was provided to the Court documents another evaluation by Dr. Wood on April 25, 2018. Plaintiff's primary complaint at the time was bilateral lower extremity numbness when sleeping. The principal diagnosis was lower back pain. Plaintiff once again refused Tylenol. An Orthopedic Clinic appointment remained pending.

It is against the backdrop of the foregoing medical and prison records, records upon which the Court may properly relay, *Gobert v. Caldwell*, 463 F.3d 339, 346 n. 24 (5th Cir. 2006), that the sufficiency of Plaintiff's allegations against the named Defendants be analyzed. In order to establish a constitutional violation, Plaintiff must demonstrate that the Defendants were deliberately indifferent to his serious medical needs which constituted an unnecessary and wanton infliction of pain. *El-Hanini v. St. Charles Parish Jail*, No. 17-CV-0966, 2017 WL 6597942 at *5-6 (E.D. La. Nov. 16, 2017)(standard for medical care for federal pre-trial detainee housed at parish jail facility). *See also Wilson v. Seiter*, 501 U.S. 294, 297, 111 S.Ct. 2321, 2323 (1991). Deliberate indifferences is an "extremely high" standard to meet, *Gobert*, 463 F.3d at 346, one that has been equated with "subjective recklessness" as

that term is used in criminal law. *Norton v. Dimazana*, 122 F.3d 286, 291 (5th Cir. 1997). "To show subjective deliberate indifference, a plaintiff must present evidence: (1) that each defendant had subjective knowledge of 'facts from which an inference of substantial risk of serious harm could be drawn,' (2) that each defendant actually drew that inference; and (3) that each defendant's response to the risk indicates that ... [they] 'subjectively intended that harm occur.'" *Tamez v. Manthey*, 589 F.3d 764, 770 (5th Cir. 2009)(quoting *Thompson v. Upshur County, Texas*, 245 F.3d 447, 458-59 (5th Cir. 2001)). Such a showing requires a plaintiff to establish that prison "officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)(quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). And in an "episodic act or omission" case like this one, to hold superiors like the Sheriff liable, a plaintiff must show not only that the official acted with subjective deliberate indifference but that "... the employee's act resulted from a municipal policy or custom adopted or maintained with objective deliberate indifference to the detainee's constitutional rights." *Scott v. Moore*, 114 F.3d 51, 54 (5th Cir. 1997)(en banc)(quoting *Hare v. City of Corinth*, 74 F.3d 633, 649 n. 4 (5th Cir. 1996)).

"Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert*, 463 F.3d at 346 (footnote omitted). The decision of whether to provide additional treatment to an inmate is a classic example of a matter of medical judgment. *Domino*, 239 F.3d at 756. If an inmate in fact receives medical treatment, federal constitutional protections are not violated simply because that treatment

11

was unsuccessful or because pain persists despite the treatment. *Gobert*, 463 F.3d at 345; *Williams v. Chief of Medical Operations, Forrest County Jail*, No. 94-10115, 1994 WL 733493 at *2 (5th Cir. Dec. 27, 1994); *Kron v. Tanner*, No. 10-CV-0518, 2010 WL 3199854 at *7 (E.D. La. May 19, 2010), *adopted*, 2010 WL 3171040 (E.D. La. Aug. 6, 2010). That an inmate's medical care "... may not have been the best money could buy" is insufficient to establish a constitutional violation, *Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992), and the failure to provide a specialist in the field of the inmate's choosing does not, in and of itself, state a claim of deliberate indifference. *Green v. McKaskle*, 788 F.2d 1116, 1127 (5th Cir. 1986). And where a §1983 claim is premised on a delay in the provision of medical care, a prisoner must also establish that he suffered substantial harm as a result of the delay. *Richard v. Martin*, 390 Fed.Appx. 323, 325 (5th Cir. 2010). "Experiencing 'occasional delays in obtaining' medical treatment is insufficient to prove a refusal of providing medical care when the inmate's ... medical records demonstrate that he received treatment." *Taylor v. Bexar County*, No. 10-CV-0045, 2011 WL 759549 at *4 (W.D. Tex. Feb. 23, 2011)(quoting *Gobert*, 463 F.3d at 346); *Richard*, 390 Fed.Appx. at 324-25.

As respects the only Defendant who was arguably named properly, the unidentified Sheriff of St. Charles Parish, the medical and other prison records that are presently before the Court fall far short of establishing the objective and subjective components needed to prevail on a claim of deliberate indifference. In fact, other than naming the Sheriff as a Defendant, Plaintiff presents no facts whatsoever showing that the Sheriff had any direct involvement in, or was even aware of, the provision of medical care to him. Plaintiff attaches to his complaint inmate grievance forms dated December 16, 26, and 28, 2017 and January 29, 2018, as well as an "Inmate Request Form" dated December 7, 2017, in which he

12

complained of the adequacy of the medical care that he had received, requested to be seen by a specialist, and asked to be provided with a better mattress. (Rec. doc. 5-1, pp. 7-16). However, none of those grievances were directed or responded to by the Sheriff and there is no evidence that he was even aware of them. What the records that are before the Court do show is that Plaintiff was evaluated by medical personnel within minutes of the incident complained of and that he has received medical care for his injuries, as well as other conditions, on a regular and continuous basis throughout his stay at SCPCC/NCCC. Moreover, on a number of occasions, Plaintiff actually refused the medication that had been prescribed and offered to him. To the extent that there were any lapses in the provision of medical care to Plaintiff, there is no evidence that those lapses were caused or even known by the Sheriff and no substantial harm is evident as a result thereof. As was aptly noted by the Fifth Circuit, "[c]ontinuing … pain is unpleasant. Its existence does not, however, in and of itself demonstrate that a constitutional violation occurred." *Mayweather*, 958 F.2d at 91. In short, the determinative issue here is not whether the medical care that Plaintiff received was substandard in some respect, whether his medical problems or pain persisted despite the treatment, or whether he was dissatisfied with his care; rather, it is only whether his serious medical needs were met with deliberate indifference <u>by the named Defendants</u>. Based upon a review of the record that is presently before it, the Court easily answers that question in the negative.

## **RECOMMENDATION**

For the foregoing reasons, it is recommended that Plaintiff's suit be dismissed with prejudice pursuant to 28 U.S.C. §1915A(b) and 42 U.S.C. §1997e(c).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United States Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996)(en banc).[2]

New Orleans, Louisiana, this  21st  day of           May          , 2018.

                                              MICHAEL B. NORTH
                                     UNITED STATES MAGISTRATE JUDGE

---

[2] *Douglass* referenced the previously-applicable 10-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. §636(b)(1) was amended to extend that period to 14 days.